

# NUMBER 13-22-00537-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

NINFA CASTANEDA AND
ELOY CASTANEDA,                                                        Appellants,

v.

WILMA GARZA CHAPA,
INDEPENDENT EXECUTOR OF
THE ESTATE OF NINFA RIVAS
MCKINZIE, AND AS TRUSTEE OF
THE SAMUEL GARZA TRUST,                                              Appellee.

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2
## OF NUECES COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Tijerina, Silva, and Peña**
**Memorandum Opinion by Justice Silva**

This case concerns the distribution of a retirement annuity from the Teacher

Retirement System of Texas (TRS) accumulated by Ninfa Rivas McKinzie (the decedent).

Appellants Ninfa and Eloy Castaneda[1] appeal the trial court's order setting aside beneficiary designations previously executed by the decedent in favor of Ninfa and Eloy. By three issues, which have been reorganized, Ninfa and Eloy argue the trial court lacked subject matter jurisdiction to preside over this suit. We affirm.

## I.    BACKGROUND

The decedent passed away on February 2, 2018. She was survived by her five adult children: Ninfa, Thelma Garza Rodriguez Wallace, Wilma Garza Chapa, Anita Rowlett, and Samuel Garza.[2]

In May 2018, the trial court admitted the decedent's will into probate. Five months later, appellee Wilma, as executrix of the decedent's estate and trustee of the Samuel Garza Trust, filed a petition for declaratory judgment seeking to set aside a quitclaim deed executed by the decedent, deeding her home to Thelma in 2013. The petition alleged claims for fraud, breach of fiduciary duty, and conspiracy, and named Thelma, Ninfa, and Eloy as defendants.[3]

Citing the decedent's lack of capacity, Wilma also sought to set aside TRS beneficiary designations made in 2015 and 2016, wherein the decedent named Ninfa and Eloy as joint primary beneficiaries and Thelma as an alternate beneficiary. Prior to these designations, the decedent had named Samuel as the sole primary beneficiary.[4]

---

[1] Eloy is Ninfa's husband, and Ninfa is the decedent's daughter.

[2] Anita is a court appointed guardian for Samuel, an incapacitated person.

[3] Though a named defendant in the underlying suit, Thelma is not a party to this appeal.

[4] The appellate record contains "Designation of Beneficiary" forms spanning several decades. The decedent named Samuel as the primary or alternative beneficiary in all "Designation of Beneficiary" forms before the 2015 and 2016 designations. In the decedent's "Application for Service Retirement,"—the form

On May 16, 2022, the trial court heard evidence on this case[5] and rendered a decision, in part, against Ninfa and Eloy. The trial court found Ninfa and Eloy had breached their fiduciary duty, and the decedent lacked the capacity to execute a beneficiary designation for TRS benefits in 2015 and 2016. The trial court ordered the 2015 and 2016 beneficiary designations void and ordered Ninfa to hold any monies received from TRS in a constructive trust[6] for the benefit of Samuel. The trial court determined Wilma had not established her remaining claims or that the decedent lacked the capacity to execute the deed in 2013.

This appeal followed.

## II. STANDING AND RIPENESS

By their third issue, which we address first, Ninfa and Eloy argue the trial court lacked subject matter jurisdiction "under judicial doctrines of both 'standing and ripeness.'"

## A. Standard of Review

"While standing focuses on the issue of *who* may bring an action, ripeness focuses on *when* that action may be brought." *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000). Because standing and ripeness are components of subject matter jurisdiction, whether a party has standing or whether a claim is ripe are legal questions

---

preceding her 2015 designation—she selected payment option number one: "a reduced annuity payable throughout [her] life with the provision that upon [her] death the redirect annuity shall be continued throughout the life of, and paid to the person designed hereupon as primary beneficiary" and designated Samuel as the primary beneficiary.

[5] The reporter's record was not included in the appellate record.

[6] "A constructive trust is 'an equitable, court-created remedy designed to prevent unjust enrichment.'" *Freeport-McMoRan Oil & Gas LLC v. 1776 Energy Partners, LLC*, 672 S.W.3d 391, 394–95 n.5 (Tex. 2023) (quoting *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015)).

subject to de novo review. *Est. of Johnson*, 631 S.W.3d 56, 62 (Tex. 2021); *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020). "We review the plaintiff's pleadings to determine whether he affirmatively demonstrated the court's jurisdiction to hear the cause." *In re Est. of Rushing*, 644 S.W.3d 383, 386 (Tex. App.—Tyler 2022, pet. denied) (cleaned up); *see also Glasstex, Inc. v. Arch Aluminum & Glass Co. Inc.*, No. 13-07-00483-CV, 2016 WL 747893, at *5 (Tex. App.—Corpus Christi–Edinburg Feb. 25, 2016, no pet.) (mem. op.).

## B.     Standing Versus Capacity

"Generally, standing involves a threshold determination of whether a plaintiff has a sufficient 'justiciable interest' in the suit's outcome to be entitled to a judicial determination." *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018). "[A] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Tex. Propane Gas Ass'n v. City of Houston*, 622 S.W.3d 791, 799 (Tex. 2021) (quoting *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (orig. proceeding) (per curiam) (explaining that "[t]he Texas standing requirements parallel the federal test for Article III standing . . . .")). Absent standing, a court lacks subject matter jurisdiction over the suit, "and the merits of the plaintiff's claims thus cannot be litigated or decided." *In re H.S.*, 550 S.W.3d at 155; *see also Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001) ("The standing doctrine identifies those suits appropriate for judicial resolution.").

In addition to standing, a plaintiff must have the capacity to pursue a claim. *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 775 (Tex. 2020). For example, "a minor,

4

incompetent, or estate may have suffered an injury and thus have a justiciable interest in the controversy," but these parties lack the legal capacity to sue. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). In these instances, "the law . . . grants another party the capacity to sue on their behalf." *Id.*; *see* TEX. EST. CODE ANN. § 351.054(a) ("An executor or administrator . . . may sue to recover property, debts, or damages."); *see also Est. of Simo*, No. 13-16-00211-CV, 2017 WL 4837767, at *2 (Tex. App.—Corpus Christi–Edinburg Oct. 26, 2017, no pet.) (mem. op.) (concluding that an incapacitated individual was unable to sue in her individual capacity and required suit to be brought by a representative on her behalf); *Cantu v. Medina*, No. 13-16-00566-CV, 2017 WL 4296616, at *2 (Tex. App.—Corpus Christi–Edinburg Sept. 28, 2017, no pet.) (mem. op.) (observing that "[o]nly a duly qualified and appointed representative of an estate may file suit on the estate's behalf," and generally, "heirs to an estate are not entitled to maintain a suit for the recovery of property belonging to the estate"). Unlike standing, however, "a challenge to a party's capacity must be raised by a verified pleading in the trial court" or such argument will be waived on appeal. *Lovato*, 171 S.W.3d at 849. (first citing TEX. R. CIV. P. 93(1)–(2); and then *Sixth RMA Partners v. Sibley*, 111 S.W.3d 46, 56 (Tex. 2003)).

Here, Wilma sued Ninfa and Eloy on behalf of the decedent's estate as executrix and as trustee of Samuel's trust seeking to set aside three transactions: (1) a quit-claim deed in 2013, (2) a TRS beneficiary designation in 2015, and (3) a TRS beneficiary designation in 2016. As executrix, Wilma sought to void a deed transaction between the decedent and Thelma, alleging fraud, breach of fiduciary duty, and conspiracy by Thelma,

5

Ninfa, and Eloy. Pleading similar claims as trustee of Samuel's trust, Wilma also sought to void TRS beneficiary designations made in 2015 and 2016, which divested Samuel of previously designated TRS annuity benefits. Wilma's pleadings, therefore, identified the individuals personally aggrieved (the decedent's estate and Samuel), alleged an injury (divestment of property and retirement assets) fairly traceable to unlawful conduct (fraud, breach of fiduciary duty, and conspiracy) by defendants (Thelma, Ninfa, and Eloy), and sought redress (declaratory judgment). Thus, we conclude Wilma has demonstrated standing. *See Tex. Propane Gas Ass'n*, 622 S.W.3d at 799; *see also City of S. Padre Island v. Surfvive*, No. 13-20-00536-CV, 2022 WL 2069216, at *2 (Tex. App.—Corpus Christi–Edinburg June 9, 2022), review denied, 678 S.W.3d 727 (Tex. 2023) (mem. op.) ("To establish standing in Texas, a plaintiff must allege a concrete injury and a real controversy between the parties that will be resolved by the court.") (cleaned up)). We overrule this subissue.

To the extent that Ninfa and Eloy challenge Wilma's capacity to bring suit as executrix of the decedent's estate or trustee of Samuel's trust, Ninfa and Eloy do not contend, nor do they direct us to where in the record, they raised a challenge to Wilma's capacity via a verified plea.[7] "Requiring a defendant to raise this 'wrong plaintiff' problem

---

[7] Appellants' argument on this issue reads in its entirety as follows:

"Standing", one prong of [s]ubject-matter jurisdiction, refers to the court's power to hear a particular type of suit. *Id*.; *see CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996) and [sic] ("[B]ecause standing is implicit in subject-matter jurisdiction, it cannot be waived, may be raised at any time, and may be raised for the first time on appeal[.]"); *In re N.L.G.*, 238 S.W.3d 828, 830 (Tex. App.—Fort Worth 2007, no pet.) (per curiam) (permitting a challenge to standing on appeal, even though the issue was not raised in the trial court). In this case the Estate, nor the Trust had any vested or contingent interest in the TRS An[n]uity. This left her simply as the appointed Executor of a contested will, that was also

6

by verified plea allows the plaintiff an opportunity to correct the problem if possible, such as through assignment or joinder, and signals whether the parties need to develop and present evidence on the issue at trial." *Pike*, 610 S.W.3d at 779; *see* TEX. R. CIV. P. 93 (1), (2). A party who does not challenge capacity via a verified pleading in the trial court waives any right to complain about the matter on appeal. *See Pike*, 610 S.W.3d at 779; *see also Kessling Servs. v. Manning*, No. 13-19-00076-CV, 2020 WL 2213948, at *3 (Tex. App.—Corpus Christi–Edinburg May 7, 2020, no pet.) (mem. op.) (concluding appellant failed to preserve the issue for appellate review where appellant failed to challenge a party's capacity to bring suit by a verified pleading in the trial court). Accordingly, we cannot consider Ninfa and Eloy's challenge to Wilma's capacity in this appeal. *See Lovato*, 171 S.W.3d at 849; *see also Kessling Servs.*, 2020 WL 2213948, at *3. We overrule this subissue.

## C. Ripeness

"Under the ripeness doctrine, we consider whether, at the time a lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 706 (Tex. 2021) (quoting *Gibson*, 22 S.W.3d at 851–52). Contrary to Ninfa and Eloy's invocation of the ripeness doctrine, this is not a case where the resolution of the claims brought against Ninfa and Eloy depended upon contingent or hypothetical facts or upon events that have not yet occurred. *See id.*; *see also Tex. Bd. of Chiropractic Exam'rs v.*

---

an expressly revoked will, fighting to maintain her position and facing a valid will being filed for probate under [Texas Estates Code] § 256.102.

7

*Tex. Med. Ass'n*, 270 S.W.3d 777, 781 (Tex. App.—Austin 2008, no pet.). Wilma's alleged injury here, the deprivation of property and assets, by Ninfa and Eloy's alleged acts of fraud, breach of fiduciary duty, and conspiracy, preceded Wilma's filing of the lawsuit. Therefore, Wilma's claims are ripe. *See Eagle Oil & Gas Co.*, 619 S.W.3d at 706.

We overrule Ninfa and Eloy's third issue in its entirety.

### III.        PENDENT OR ANCILLARY JURISDICTION

By what we construe as Ninfa and Eloy's first issue, Ninfa and Eloy maintain the trial court erred by invoking its subject matter jurisdiction because "the TRS Annuity passed outside of ancillary or pendent probate estate proceeding[s]." As previously established, we review de novo whether a court has subject matter jurisdiction. *Est. of Johnson*, 631 S.W.3d at 62; *Dowell v. Quiroz*, 462 S.W.3d 578, 582 (Tex. App.—Corpus Christi–Edinburg 2015, no pet.).

The jurisdiction of all Texas courts "derives from the Texas Constitution and state statutes." *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 459–60 (Tex. 2011) (orig. proceeding). County courts at law, specifically, "are creatures of statute with varying jurisdiction individually demarcated by the Legislature." *Ditech Servicing, LLC v. Perez*, 669 S.W.3d 188, 190 (Tex. 2023); *see* TEX. GOV'T CODE ANN. § 25.0003(a). For example, unlike most Texas statutory county courts at law possessing limited concurrent jurisdiction with the district court, Nueces County courts at law hold "the jurisdiction provided by the constitution and by general law for district courts." [8] TEX. GOV'T CODE ANN.

---

[8] Of the nearly 100 counties with statutory county courts at law, only thirteen counties have statutory county courts at law with the jurisdiction "provided by the constitution and by general law for district courts." *See* TEX. GOV'T CODE ANN. §§ 25.0212 (Bowie County), 25.0312 (Calhoun County),  25.0362

§ 25.1802(a)(1); *see* TEX. CONST. art. V, § 8 (providing that district courts have jurisdiction over "all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court").

However nuanced a jurisdictional analysis regarding statutory county courts at law may be, it is further complicated by probate jurisdiction, which "is, to say the least, somewhat complex." *Palmer v. Coble Wall Tr. Co.*, 851 S.W.2d 178, 180 n.3 (Tex. 1992). "All probate proceedings must be filed and heard in a court exercising original probate jurisdiction." TEX. EST. CODE ANN. § 32.001. In counties, such as Nueces County, where there exists no statutory probate court, the county court at law possesses original probate jurisdiction. *Id.* § 32.002(b). A plaintiff's claims must fall within the scope of a "probate proceeding" to invoke the original probate jurisdiction of a county court at law. *Id.* § 31.001 (defining the scope of "probate proceeding"); *see also Est. of Puckett*, No. 02-18-00349-CV, 2019 WL 3492396, at *3 (Tex. App.—Fort Worth Aug. 1, 2019, no pet.) (mem. op.). Probate proceedings can include "an application, petition, motion or action regarding . . . an estate administration" and "any other matter related to the settlement, partition, or distribution of an estate." TEX. EST. CODE ANN. § 31.001(4), (6). The estates code further affords a statutory probate court and statutory county court at law exercising its probate jurisdiction with the ability to "exercise its pendent or ancillary jurisdiction over nonprobate matters when there is a close relationship between the probate and

---

(Cass County), 25.0732 (El Paso County), 25.0862 (Galveston County), 25.0942 (Gregg County), 25.1142 (Hopkins County), 25.1312 (Kaufman County), 25.1802 (Nueces County), 25.1862 (Parker County), 25.2012 (Rockwall County), 25.2142 (Smith County), 25.2392 (Waller County).

nonprobate claims and doing so will aid in the efficient administration of the estate." *In re Est. of Rushing*, 644 S.W.3d at 389; *see* TEX. EST. CODE ANN. § 32.001(b); *see also Mortensen v. Villegas*, 630 S.W.3d 355, 362 (Tex. App.—El Paso 2021, no pet.).

It is undisputed that this cause was filed in Nueces County Court at Law No. 2, a statutory county court at law, which possesses original probate jurisdiction. *See* TEX. GOV'T CODE ANN. § 25.1802. Further, neither party appears to dispute that Wilma's pleading concerning the 2013 deeded transaction constituted an appropriate probate claim or that a probate proceeding was otherwise pending in probate court. *See In re Est. of Rushing*, 644 S.W.3d at 389; *see also Est. of Puckett*, 2019 WL 3492396, at *3 ("By alleging in the pending probate proceeding that the general warranty deed was void based on [the decedent's] lack-of-capacity and undue-influence arguments, [the plaintiff] was bringing a claim arising from the estate administration that directly related to the settlement, partition, and distribution of [the decedent's] estate."). At issue then is whether trial court has jurisdiction to hear Wilma's TRS annuity claims concerning a nonprobate asset. *See* TEX. EST. CODE ANN. § 32.001(b); *In re Est. of Rushing*, 644 S.W.3d at 389. Ninfa and Eloy argue that the TRS annuity claims do not exist in close relationship to Wilma's probate claim, and therefore, the county court at law was without jurisdiction. We disagree that, for purposes of the county court at law's subject matter jurisdiction, there must exist a nexus between Wilma's probate and nonprobate claim.

Absent an express constitutional or statutory grant, a court lacks jurisdiction to decide any case. *In re Allcat Claims Serv., L.P.*, 356 S.W.3d at 459–60. Here, the county court at law unequivocally possessed jurisdiction to hear both probate and nonprobate

10

matters. *See* TEX. GOV'T CODE ANN. § 25.1802; TEX. EST. CODE ANN. § 32.002(b). While the estates code affords limited-in-jurisdiction statutory probate courts and statutory county courts at law additional jurisdiction over "pendent and ancillary jurisdiction as necessary to promote judicial efficiency and economy," *see* TEX. EST. CODE ANN. § 32.001(b), such provision neither limits nor substantively expands the county court at law's jurisdiction here—which already possessed jurisdiction to hear both probate *and* nonprobate matters independent from the estates code. *See* TEX. GOV'T CODE ANN. § 25.1802; *see also Lee v. Lee*, 528 S.W.3d 201, 212 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("Our review of the legislative framework for a statutory probate court's jurisdiction shows that the court's trust jurisdiction is independent of its probate jurisdiction."); *In re Est. of Ikenaga*, No. 04-15-00005-CV, 2016 WL 928781, at *2 n.1 (Tex. App.—San Antonio Feb. 24, 2016, no pet.) (mem. op.) (rejecting appellant's claim that because a matter involved nonprobate property, the trial court lacked jurisdiction to make orders in relation to nonprobate property because "statutory probate courts have jurisdiction not only over probate proceedings, but also 'pendent and ancillary jurisdiction as necessary to promote judicial efficiency and economy,' and concurrent jurisdiction with the district court in various other actions").

Assuming arguendo that the Nueces County Court at Law No. 2's jurisdiction was predicated on the existence of an "ancillary or pendent" matter, Ninfa and Eloy's argument would still fail. Although the TRS annuity is a nonprobate asset, the TRS annuity claims concern the same individual defendants (Ninfa, Eloy, and Thelma), same causes of action (fraud, breach of fiduciary duty, and conspiracy), and same underlying facts evidencing

11

the decedent's lack of capacity[9] as Wilma's probate claim. *See In re Est. of Hallmark*, 629 S.W.3d 433, 438 (Tex. App.—Eastland 2020, no pet.) ("Typically, probate courts exercise ancillary or pendent jurisdiction when a close relationship exists between the non-probate claims and the claims against the estate."). In other words, Wilma's TRS annuity claims possess a sufficiently "close relationship" to Wilma's probate claim so as to warrant the trial court's exercise of its ancillary jurisdiction as necessary to promote judicial efficiency and economy. *See* TEX. EST. CODE ANN. § 32.001; *see, e.g.*, *Narvaez v. Powell*, 564 S.W.3d 49, 58 (Tex. App.—El Paso 2018, no pet.) (concluding probate court had jurisdiction to preside over a "legal malpractice claim . . . interwoven with and related to Ninfa and Eloy's breach of fiduciary duties, barratry, and declaratory judgment causes of action"); *Dailey* v. McAfee, No. 01-18-01060-CV, 2020 WL 4758429, at *6 (Tex. App.—Houston [1st Dist.] Aug. 18, 2020, no pet.) (mem. op.) (concluding probate court was not prohibited from exercising its pendent and ancillary jurisdiction in declaratory judgment action filed to construe a divorce decree and related settlement agreement).

We overrule appellant's first issue.

### IV.     ADMINISTRATIVE PROCEDURES ACT (APA) AND TRS

By what we construe as Ninfa and Eloy's second issue, Ninfa and Eloy argue the trial court was without subject matter jurisdiction because (1) in contravention to § 2001.038 of the Texas Government Code, Wilma failed to exhaust the remedies available, "file suit in the proper forum," join TRS as a party to this suit, and "petition TRS

---

[9] The record contains the decedent's medical records between 2013 and 2016, which included notes from 2014 regarding the decedent's gradual "memory impairment" that has "been occurring in a persistent pattern for years," and a practitioner's "Statement of Medical Need," indicating the decedent was suffering from cognitive, hearing, and vision impairment and required "lifetime" home care services in 2016.

for relief"; and (2) Texas Government Code § 824.1012(a-1) prohibits the trial court's adjudication of this suit. *See* TEX. GOV'T CODE ANN. §§ 824.1012(a-1), 2001.038.

## A.      Standard of Review

The issues here necessitate the interpretation of several provisions, which we review de novo. *In re J.S.*, 670 S.W.3d 591, 596 (Tex. 2023). "We interpret statutes by looking to their plain language and construing the text in light of the statute as a whole." *City of Austin v. Quinlan*, 669 S.W.3d 813, 821 (Tex. 2023). "We need not and should not seek the answer from any source other than the statute's plain language." *Rodriguez v. Safeco Ins. Co. of Indiana*, 684 S.W.3d 789, 793 (Tex. 2024). "[W]hen a statute's words are unambiguous and yield but one interpretation, the judge's inquiry is at an end." *Id.* (cleaned up).

## B.      APA § 2001.038

Ninfa and Eloy assert that the trial court lacked subject matter jurisdiction because Wilma ignored a list of suit requirements outlined in § 2001.038 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 2001.038.

Entitled "Declaratory Judgment," § 2001.038 of the government code sets forth administrative procedures and requires that APA suits be brought in Travis County and the state agency implicated be made a party to the action. The statute is included in applicable part below:

> (a) *The validity or applicability of a rule*, including an emergency rule adopted under [§] 2001.034, may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.

(b)  The action may be brought only in a Travis County district court.

(c)  The state agency must be made a party to the action.

(d)  A court may render a declaratory judgment without regard to whether the plaintiff requested the state agency to rule on the validity or applicability of the rule in question.

*Id.* § 2001.038 (a)–(d) (emphasis added). The APA defines a "rule" as "a state agency statement of general applicability that: (i) implements, interprets, or prescribes law or policy; or (ii) describes the procedure or practice requirements of a state agency." *Id.* § 2001.003(6).

By its plain language, § 2001.038 provides the legal avenue, i.e., declaratory judgment, for a party to challenge the validity or applicability of an agency's rule. *See Tex. Tel. Ass'n v. Pub. Util. Comm'n of Tex.*, 653 S.W.3d 227, 264 (Tex. App.—Austin 2022, no pet.); *see, e.g., Muth v. Voe*, No. 03-22-00420-CV, 2024 WL 1340855, at *4 (Tex. App.—Austin Mar. 29, 2024, no pet. h.) (challenging the validity of a new rule announced by the Texas Department of Family and Protective Services and seeking declaratory judgment under § 2001.038); *SaveRGV v. Tex. Gen. Land Office*, No. 13-22-00358-CV, 2024 WL 385656, at *6 (Tex. App.—Corpus Christi–Edinburg Feb. 1, 2024, no pet. h.) (challenging the validity of Texas Natural Resources Code § 61.132 and seeking declaratory judgment under § 2001.038). Significantly, Ninfa and Eloy do not specify any rule being challenged here, and Ninfa and Eloy's entire argument on this issue reads as follows:

> In this case, TRS recognized [a]ppellants as the legal beneficiaries of the TRS Annuity. [Wilma] was required to bring this action by way of the administrative procedures and rules issued by the TRS. Once they were

exhausted, the proper forum to file a claim would be in the Travis County District Court. [TEX. GOV'T. CODE ANN.] § 2001.038.

As relevant here, TRS benefits are regulated by Chapter 824 of the Texas Government Code, which allows a retiree to elect an annuity that provides reduced payments to the retiree during their life and, at death, continued payments to and throughout the life of a designated beneficiary. *See* TEX. GOV'T CODE ANN. § 824.101; *see also Holmes v. Kent*, 221 S.W.3d 622, 624 (Tex. 2007); *Elsik v. Elsik*, No. 04-10-00705-CV, 2011 WL 2473088, at *1 (Tex. App.—San Antonio June 22, 2011, no pet.) (mem. op.). However, as noted *supra*, Ninfa and Eloy's argument contains no challenge to the validity or applicability of any rule, pursuant to Chapter 824 or otherwise. Therefore, we decline to impose § 2001.038 requirements regarding forum, available remedies, and joinder where there exists no argument or evidence of a challenge to the validity or applicability of an agency's rule as required by the plain language of § 2001.038. We overrule Ninfa and Eloy's second issue in part.

## C.   TRS § 824.1012(a-1)

Next, Ninfa and Eloy assert that § 824.1012(a-1) prohibits the trial court's authority. Because we do not read statutes in isolation, for purposes of our analysis, we include § 824.1012(a) as well as § 824.1012(a-1) below:

> (a) As an exception to [§] 824.101(c) [(Designation of Beneficiary)], a retiree who selected an optional service retirement annuity under [§] 824.204(c)(1), (c)(2), or (c)(5) or an optional disability retirement annuity under [§] 824.308(c)(1), (c)(2), or (c)(5) and who has received at least one payment under the plan selected may change the optional annuity selection made by the retiree to a standard service or disability retirement annuity as provided for in this section. If the beneficiary of the optional annuity was the spouse of the retiree when the retiree designated the spouse as beneficiary

15

of the optional annuity, to change from the optional annuity to a standard retirement annuity under this subsection, the spouse or former spouse, as applicable, who was designated the beneficiary of the optional annuity must sign a notarized consent to the change or a court with jurisdiction over the marriage of the retiree and beneficiary must approve or order the change. *The change in plan selection takes effect when the retirement system receives the request to change the plan, provided the signed consent form or court order, as applicable, is subsequently received by the retirement system.*

(a-1) The executive director or the executive director's designee has exclusive authority to determine whether the language *in a court order described by Subsection (a)* is sufficient to indicate that the court has approved or ordered the change in plan selection. A determination by the executive director or the executive director's designee under this subsection may be appealed only to the board of trustees, except that the board by rule may waive the requirement that an appeal be to the board. An appeal to the board is a contested case under Chapter 2001. The standard of review of an appeal brought under this subsection is by substantial evidence.

TEX. GOV'T CODE ANN. § 824.1012 (emphasis added).

This provision exists inapposite to Ninfa and Eloy's argument that the trial court is prohibited from adjudicating the suit. Entitled "Post-Retirement Change in Retirement Payment Plan for Certain Retirement Benefit Options," this statute recognizes and permits a court-ordered post-retirement change to TRS accounts by retirees. *See id.* Perhaps more significantly, however, this statute contemplates a situation not before us— wherein a retiree seeks to make changes to their designation of beneficiary during their lifetime. *See id.* This provision does not expressly prohibit the trial court's adjudication of this suit because it does not account for litigation or events following a retiree's death. The provision is thus, inapplicable.

16

We overrule Ninfa and Eloy's second issue.[10]

### V.    CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
16th day of May 2024.

---

[10] Embedded within this subissue, Ninfa and Eloy argue the trial court's creation of the constructive trust was preempted by § 821.103 and § 821.005. No analysis or citations to case law or the record accompanies this argument; thus, the subissue is waived for inadequate briefing. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (holding appellate courts have discretion to deem points of error waived due to inadequate briefing); *Gomez v. Esquivel*, No. 13-19-00037-CV, 2020 WL 1303233, at \*4 (Tex. App.—Corpus Christi–Edinburg Mar. 19, 2020, no pet.) (mem. op.) (same).